IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DONNA INGRAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:09-cv-0233-SRW |
| | ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

Plaintiff Donna Ingram brings this action pursuant to 42 U.S.C. § 405(g) and

§ 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security

("Commissioner") denying her application for disability insurance benefits and Supplemental

Security Income under the Social Security Act.  The parties have consented to entry of final

judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  Upon review of the

record and briefs submitted by the parties, the court concludes that the decision of the

Commissioner is due to be affirmed.

**BACKGROUND**

On August 17, 2004, plaintiff filed an application for disability insurance benefits and

Supplemental Security Income. At the time of her application, plaintiff was a 43 year old

female with a high school equivalency diploma. She alleges disability due to thyroid

problems, vision problems, shortness of breath, fatigue, and residual injury from a motor

vehicle accident in January 2003.  (R. 125).  Plaintiff has past relevant work as a cleaner,

attendant companion, bartender, food service worker, hostess/cashier, receptionist, and button-maker.  (R. 355).

The record indicates that Dr. Gilberto Sanchez began treating plaintiff as early as August 10, 1999.  (Exhibit 3F).  Dr. Sanchez has treated plaintiff for anxiety, insomnia, hyperthyroidism, bronchitis and sinusitis; he has also reported plaintiff's complaints of fatigue.  Upon her initial visit, Dr. Sanchez prescribed Xanax for plaintiff's anxiety.  Once treatment for her anxiety began, Dr. Sanchez noted on several occasions that plaintiff's neurological systems were stable on medications (R. 177, 179, 180, 182), and plaintiff reported that the Xanax improved her insomnia (R. 181).  On September 11, 2002, plaintiff again sought treatment, complaining of severe fatigue, racing heart, weight gain, excessive sweating, headaches, tingling in the hands, and edema in the hands and feet.  She also reported that her insomnia made her "feel[] off."  Dr. Sanchez noted tachycardia in his examination, and diagnosed insomnia, fatigue, hypothyroidism, breast tenderness, and hyperlipidemia.  (R. 170).  An EKG was performed, which was normal, and Dr. Sanchez prescribed Paxil; he had prescribed Synthroid on September 5 (R. 171).  Plaintiff reported at her next visit, on October 11, 2002, that she was doing a lot better.  Dr. Sanchez prescribed Zocor and Paxil, and ordered a refill of her other medications.  (R. 169).

Plaintiff presented to the Prattville Baptist ER on January 26, 2003, after being involved in a motor vehicle accident.  (Exhibit 1F).  Her initial clinical impression was a lumbar strain and contusions of the chest, abdomen, and back. (R. 137).  A cervical spine exam was normal (R. 140), and a lumbar spine exam revealed advanced degenerative disc

disease (R. 142).  Upon discharge, plaintiff was prescribed Lortab, Valium, and Motrin, and was instructed to apply warm heat to the lower back.  (R. 143).

On January 31, 2003, plaintiff presented to Dr. Sanchez for treatment following her motor vehicle accident.  He reviewed plaintiff's x-rays from Prattville Baptist – he noted "all were [negative]."  (R. 167).  Plaintiff complained of chest and back pain, and Dr. Sanchez diagnosed a chest contusion and neck bruise.  He prescribed Lortab, Flexeril, and Valium. (Id.).  In a follow up on February 7, 2003, Dr. Sanchez noted motor vehicle accident, chest contusion, back pain, and a breast contusion.  He prescribed refills and instructed plaintiff to apply a warm compress.  (R. 166).  On March 4, plaintiff reported that her pain was improving.  Dr. Sanchez diagnosed motor vehicle accident, chest contusion, and "back pain – C-spine → L/S."  (R. 165).  He ordered refills, and wrote plaintiff a doctor's excuse for work for the dates of January 15 through March 18, 2003.  (Id.).  Dr. Sanchez released plaintiff to work on April 23, 2003, and noted anxiety, panic attacks, severe depression, allergies, and motor vehicle accident. (R. 163).  Edema of the legs was noted on May 29th. Dr. Sanchez diagnosed "chronic pain" on July 2, 2003, but all physical examination findings were noted to be within normal limits.  (R. 161).

Dr. Judith Rogers, Ph.D., evaluated plaintiff on May 16, 2003, after administering the MMPI-2.  (Exhibit 2F).  Plaintiff reported that her aunt and father suggested she take the test. She further reported that she was working three days a week for a barbecue restaurant doing catering, and planned eventually to work full time.  Dr. Rogers explained that plaintiff presented with what should be a valid profile – plaintiff's "validity scales were within normal

3

limits, although the F-Scale was right at a borderline elevation." (R. 145). Plaintiff

presented with elevations on scales 4, 2, and 6.[1] She presented on other scales as having a

fair amount of anxiety, and the "Supplementary Scales suggest that she feels quite

overwhelmed with her current situation and has difficulty knowing how to handle situations

in life." (Id.). Mr. Rogers indicated that plaintiff "did not show symptoms of Post-Traumatic

Stress Disorder," despite her childhood abuse. (Id.). Dr. Rogers suggested that plaintiff might

benefit from treatment with an anti-depressant medication to help her control some of her

symptoms of anxiety and depression, or that she might benefit from counselling to learn how

to control her own life; plaintiff was skeptical of both. She expressed concern over side

effects from the anti-depressant medication and did not feel that it would help her. (R. 146).

   Dr. James Colley performed a consultative physical examination on November 29,

2004. (Exhibit 4F). Plaintiff complained of mid and low back pain (7/10, both low and mid

back pain), arm pain, chest pain, and neck pain (4/10 without radiation). She stated that she

---

[1] According to Dr. Rogers' report, an individual with elevations in scales 4,2, and 6 exhibits the following:

> People with this profile type are often frustrated by their own lack of
> accomplishment and feel resentful of demands put on them by other people, which
> they feel are unfair. Many people with this type of profile frequently have trouble
> or crises in their life. They often are impulsive and have difficulty with delay of
> gratification. They often have work histories with numerous types of jobs and job
> changes.
>
> People with this profile tend to be energetic, sociable, and outgoing. They tend to
> create favorable first impressions, but often have a tendency to manipulate others.
> They tend to have more difficulty with long term relationships.
>
> People with this profile present on the surface as being confident and outgoing, but
> often tend to be introverted, self-conscious, and passively dependent. Underneath
> a facade of competence, they often feel inadequate and unsatisfied with themselves
> and are really uncomfortable in social interactions.
>
> People with this profile type do not do particularly well in traditional
> psychotherapy. They often do not stay in therapy long, and once an original
> problem or crisis is resolved they tend to leave therapy prematurely.

(R. 145).

could only walk for about a half mile.  Plaintiff further complained of panic attacks every day, dreams, insomnia, anxiety, and depression.  Plaintiff's physical exam was essentially normal – her straight leg raises were normal, she experienced no paravertebral muscle spasm or tenderness, but mild posterior neck tenderness without spasm.  Plaintiff had no clubbing, cyanosis, edema, crepitus, effusions, deformities or trigger points.  Dr. Colley diagnosed plaintiff with post traumatic stress disorder and panic attacks daily, hypothyroidism, degenerative disc disease of the cervical and lumbar spine, obesity, and acute bronchitis and sinusitis.  Dr. Colley's Medical Source Statement indicated that plaintiff had multiple arthralgias of the cervical, mid thoracic spine and LS spine; and she may have traumatic arthritis from her motor vehicle accident. Dr. Colley stated he doubted that plaintiff had severe degenerative disc disease; she had essentially a normal examination. His functional limitations included: walking at least 6 hours in an 8-hour workday; sitting at least 6 hours in an 8-hour workday while taking routine breaks; lifting/carrying at least 20 pounds occasionally and 10 pounds frequently; and no postural, manipulative, or visual limitations. Dr. Colley further noted that plaintiff could communicate effectively despite having a past history of post traumatic stress disorder.  (R. 217).

Dr. Vonceil C. Smith, Ph.D., performed a consultative psychological exam on December 1, 2004.  (Exhibit 5F).  Plaintiff reported that chronic anxiety, depression, and symptoms associated with hypothyroidism prohibit her from seeking or maintaining gainful employment.  She further "complained of an assortment of body aches and odd sensation" following her severe motor vehicle accident during which she was thrown from the car –

5

plaintiff "described being easily fatigued, having pain to her back, neck, hands, and feet."

(R. 218). Plaintiff explained that she completed "self-care activities independently," she had

experienced "significant weight gain with her thyroid medications," and she required more

than eight hours of sleep.  (R. 219).   Plaintiff complained of poor concentration, and "an

assortment of fears that prohibit her from engaging in previously enjoyable activities"; she

further "reported crying at least two days each week." (R. 220).  Dr. Smith described plaintiff

as having "affect ranged appropriately however she tended toward dysthymia." (R. 220).  She

further explained that although plaintiff "appears to have acquired significant relief from her

affective disorder as a function of her current medication regime[,] she remains with

moderate depression and anxiety."  (R. 221).  Given plaintiff's level of anxiety, Dr. Smith

described plaintiff as being "moderately impaired in her ability to function in a typical

vocation setting"; as having difficulty, at that time, "responding to supervision, co-workers,

and work pressures in a work setting"; and, as having "some difficulty learning new tasks."

(Id.).  Given plaintiff's recovery at the time of Dr. Smith's evaluation, she determined that

plaintiff's "prognosis for continued recovery given adequate consistent treatment would be

considered good."  (Id.).

   Dr. Kenneth Warren, Ph.D, a non-examining psychologist, completed a Mental

Functional Capacity Assessment on December 30, 2004.  (Exhibits 6F).  He indicated that

plaintiff was moderately limited in the ability to understand and remember detailed

instructions; to carry out detailed instructions; to maintain attention and concentration for

extended periods; to perform activities within a schedule, maintain regular attendance, and

be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting.  (R. 222-23).  Dr. Warren's functional capacity assessment is that she can remember simple 1-2 step instructions but not detailed instructions; she is able to attend reliably to simple 1-2 step tasks and familiar detailed tasks for 2+ hours sufficient to complete 8 hour work days and to maintain regular attendance provided usual and customary breaks and sick leave policy are given; her interaction with the public should be infrequent and on a casual basis, with non-confrontational criticism; and changes in the work environment should be infrequent and gradually introduced.  (R. 224).

On December 30, 2004, Dr. Warren also completed a Psychiatric Review Technique form. (Exhibit 7F).  From the record, Dr. Warren assessed major depression, recurrent, moderate without psychotic features (R. 229), and generalized anxiety order (R. 231) but opined that neither satisfied the diagnostic criteria to meet or equal a listing.  His functional limitations included moderate limitations in activities of daily living; moderate limitations in maintaining social functioning; moderate limitations in maintaining concentration, persistence or pace, and no episodes of decompensation.  (R. 236).

On February 10, 2005, plaintiff submitted an undated statement from Dr. Sanchez stating only that the plaintiff "has chronic pain and is unable to work." (R. 241). He thereafter diagnosed plaintiff with chronic back pain on September 9, 2005 (R. 256), December 5, 2005 (R. 254), and March 3, 2006 (R. 252). On March 3, 2006, Dr. Sanchez diagnosed generalized anxiety disorder, insomnia and chronic back pain; he prescribed Synthroid, estrogen, and Xanax to take twice daily.

On March 3, 2006, Dr. Sanchez completed a Medical Source Statement, a Disability Questionnaire, and a Clinical Assessment of Pain. (Exhibit 10F).  On the Medical Source Statement, Dr. Sanchez opined that plaintiff can frequently lift 5 pounds, and occasionally lift 10 pounds; she can sit for 3 hours, and stand for 3 hours during an 8 hours work day; she will need 2 hours of rest in addition to a morning, lunch, and afternoon break; and that she can occasionally push and pull arm or leg controls, climb and balance, perform gross and fine manipulations, bend or stoop, reach, operate motor vehicles, and work with or around hazardous machinery.  Dr. Sanchez explained that the medical basis and diagnosis for these restrictions are chronic back pain and general anxiety disorder.  He believed plaintiff's complaints of pain, stating that plaintiff's January 2003 motor vehicle accident could reasonably be expected to cause this degree of pain.  He stated that plaintiff's pain will further reduce her ability to work and she experiences pain at rest.  He further stated that his "physical findings" demonstrate her condition, and he explains that he has seen objective evidence of plaintiff's pain in records from the Baptist Prattville ER.  Last, Dr. Sanchez indicated that Xanax will adversely plaintiff's ability to work.  (R. 265-66).  On the

Disability Questionnaire, Dr. Sanchez stated he believed plaintiff could not work a full-time job, and that her condition of severe general anxiety disorder, bipolar disorder, and chronic back pain are permanent conditions that will last at least 12 months.  (R. 267).  On the Clinical Pain Assessment, Dr. Sanchez indicated that pain is present to such an extent as to be distracting to adequate performance of daily work activities; physical activity such as walking, standing, bending, stooping, moving of extremities, etc. will greatly increase pain and to such a degree as to cause distraction from task or total abandonment of task; and that plaintiff's medications will have some side effects but will be only mildly troublesome to her.  (R. 268).       Plaintiff asked for a muscle relaxer to help her sleep on May 2, 2006 – Dr. Sanchez prescribed Soma. (R. 249).  On June 5, 2006, plaintiff's chief complaint was "lower back pain x 3 months" and "Lt leg pain from knee to ankle x 3 months."  (R. 248).  Dr. Sanchez' physical examination indicated that all plaintiff's systems were within normal limits.  On September 7, 2006, plaintiff complained of weakness, fatigue, and a sore throat – Dr. Sanchez diagnosed sinus/allergies and insomnia.  He prescribed Xanax, Singulair, and Clarinex, and he gave plaintiff samples of Nasacort AQ.  (R. 244).  Dr. Sanchez diagnosed chronic back pain on January 1, March 27, and March 27, 2007, (R. 273, 275-76), and prescribed Lortab in April (R. 273).  Plaintiff's physical examinations at these visits were normal.  Dr. Sanchez continued to prescribe Xanax and Synthroid during this period. (Exhibit 12F).

On May 15, 2007, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing.  Plaintiff and two medical experts – Dr. Jack

Evans, M.D., and Dr. Doug McKeown, Ph.D. – testified.  Dr. Evans explained that there were four diagnoses listed in the record – degenerative disc disease, lumbosacral spine; degenerative disc disease, cervical spine; hypothyroidism; and episodes of bronchitis that he called asthma.  (R. 328).  Dr. Evans' RFC assessment for plaintiff included the following limitations:  sit for one hour at a time and for a total of 8 hours in an 8-hour day; stand for one hour at a time and for a total of 6 hours in an 8-hour day; walk for fifteen minutes at a time and for a total of 4 hours in an 8-hour day; frequently lift and/or carry 10 pounds; occasionally lift and/or carry 20 pounds; frequently use hands for simple grasping, pushing and pulling arm controls, fine manipulation; frequently reach overhead; occasionally push and pull leg controls, stoop, crouch, kneel, crawl, balance, work around unprotected heights or moving machinery, drive automotive equipment, or be exposed to marked changes in temperature and humidity, dust fumes, or gasses; and never climb.  (R. 330-32).  He stated that Dr. Colley's opinion concerning physical findings is the best in the record, and Dr. Colley put plaintiff at essentially the same RFC as did he.  (R. 332).  Furthermore, he thought that Dr. Sanchez' opinion is inconsistent with his treatment notes as, although Dr. Sanchez indicates that his opinion is based on physical findings, he does not list any abnormal physical findings (Id.), and there is nothing in the record to indicate weakness, loss of reflexes, or sensory changes in the legs that would be consistent with severe degenerative disc disease.  (R. 337).  According to Dr. Evans, the x-rays that Dr. Sanchez purportedly relied on, without more, are not very reliable as far as quantifying the severity of disc disease.

Dr. McKeown explained that the record and plaintiff's testimony revealed a "collage

10

of symptoms presented that include anxiety, depression, somatic preoccupation, and significant chronic dependency. The only treatment intervention plaintiff has received is for her anxiety, which "has been only in the form of intermittent use of" Xanax. (R. 340). Dr. McKeown thought that the record as a whole suggested that plaintiff suffered from a personality disorder NOS with dependent features. His mental RFC assessment included mild limitations in responding appropriately to supervision, coworkers, and customers or other members of the general public; mild limitations in maintaining social functioning, activities of daily living, and attention, concentration, or pace for periods of at least two hours; mild to moderate limitations in dealing with changes in a routine work setting, and understanding, remembering, and carrying out simple one and two step instructions; and moderate limitations in using judgment in detailed or complex work-related decisions. (R. 343-44). Dr. McKeown explained that plaintiff was functioning as a higher level than indicated by Dr. Smiths's opinion (Exhibit 5F). (R. 347). He also stated that "if Dr. Sanchez considered the claimant to have more significant problems than she did, I'm sure he would be treating her with more than [Xanax] at a mild level." (R. 348).

The ALJ rendered a decision on June 22, 2007. The ALJ concluded that plaintiff suffered from the severe impairments of "generalized anxiety disorder; major depressive disorder; and rule out post traumatic stress disorder; personality disorder, NOS with dependent features; somatization disorder; degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine; hypothyroidism; and asthma." (R. 36). He found that plaintiff's impairments, considered in combination, did not meet or equal the

11

severity of any of the impairments in the "listings."  He then found that plaintiff retained the residual functional capacity to perform her past relevant light and sedentary work, as well as other jobs existing in significant numbers in the national economy.  Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act.  On January 22, 2009, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The court does not reweigh the evidence or substitute its judgment for that of the Commissioner.  Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings.  Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Cornelius, 936 F.2d at 1145.  Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  Davis, 985 F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff argues that the ALJ erred by rejecting the opinion evidence of her treating physician, Dr. Sanchez. (Plaintiff's brief, pg. 7). The Commissioner responds that "the ALJ clearly articulated good cause reasons to give little weight to Dr. Sanchez' opinions." (Commissioner's brief, p. 7). "If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight." Roth v. Astrue, 249 Fed. Appx 167, 168 (11th Cir. 2007)(unpublished opinion)(citing 20 C.F.R. § 404.1527(d)(2)). "If the treating physician's opinion is not entitled to controlling weight, . . . 'the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" Id. (citing Crawford v. Commissioner, 363 F.3d 1155, 1159 (11th Cir. 2004)). "If the ALJ finds such good cause and disregards or accords less weight to the opinion of a treating physician, he must clearly articulate his reasoning, and the failure to do so is reversible error." Pritchett v. Commissioner, Social Security Admin, 315 Fed. Appx. 806 (11th Cir. 2009)(unpublished opinion)(citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)). "When the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. Schuhardt v. Astrue, 303 Fed. Appx. 757, 759 (11th Cir. 2008)(unpublished opinion)(citing Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)). The Eleventh Circuit has found good cause for discounting a treating physician's report when the report "'is not accompanied by objective medical evidence or is wholly

13

conclusory.'" Crawford, 363 F.3d at 1159(quoting Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir.1991)). Additionally, there is good cause where the treating physicians' opinions are "inconsistent with their own medical records," Roth, 249 Fed. Appx. at 168 (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) or "when the opinion appears to be based primarily on the claimant's subjective complaints of pain." Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007)(citing Crawford, 363 F.3d at 1159).

The ALJ assigned little weight to Dr. Sanchez's opinions.  He articulated his reasons for discrediting his opinion, as follows:

> The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.  The doctor did not have the benefit of reviewing the other medical reports contained in the current record.  The doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were truly disabled, as the doctor has reported.  The course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported.  The doctor's opinion contrasts sharply with the other evidence of record, which renders it less persuasive.

(R. 33).  The ALJ gave substantial weight to the opinions of Drs. Rogers and Smith regarding plaintiff's mental abilities.  He explained that their opinions are well supported by their own clinical examinations and testing and are generally consistent with the record as a whole; further, as licensed psychologists, the doctors are specialists whose opinions are generally given more weight than the opinion of a non-specialist.  (Id.). The ALJ accepted the testimony of the medical experts, Drs. Evans and McKeown, finding their testimony to be credible.  Based upon Dr. Evan's testimony, the ALJ also assigned substantial weight to Dr. Colley's opinion concerning plaintiff's physical abilities.

Plaintiff takes issue with the ALJ's conclusion that the doctor relied on her subjective complaints of pain, arguing instead that Dr. Sanchez specifically stated on the Medical Source Statement that he relied on both physical findings and records from the Prattville Baptist ER. (Plaintiff's brief, p. 8). The plaintiff further takes issue with the ALJ's statement that Dr. Sanchez's own reports did not reveal the type of significant clinical and laboratory abnormalities one would expect if the plaintiff were in fact disabled. (Plaintiff's brief, p. 9). The plaintiff points to the fact that Dr. Sanchez indicated on the Medical Source Statement that his "physical findings" were objective demonstration of the condition that causes plaintiff's pain (the condition listed was plaintiff's motor vehicle accident), and plaintiff's records from the Baptist Prattville ER were objective evidence of her pain. (Plaintiff's brief, pp. 8-9; see R. 266). Plaintiff does not, however, address the lack of such "physical findings" in Dr. Sanchez's treatment notes – she requests that his statements be taken at face value. Although Dr. Sanchez did note chronic back pain on several occasions, his physical examinations were essentially normal.  He indicated on January 31, 2003 that plaintiff's x-rays from the Prattville Baptist ER all were negative (R. 167), which is in sharp contrast to his listing the ER records as support for his opinion in the March 2006 Medical Source Statement that plaintiff has disabling physical limitations (R. 265-66). Further, Dr. Sanchez never diagnosed an underlying medical condition; instead, he merely noted plaintiff's complaints of chronic back pain.  Perhaps for this reason, plaintiff could not testify to what was physically wrong with her that would create pain – she described only her symptoms (R. 310-11). At the hearing, Dr. Evans testified that the x-rays alone were insufficient to

quantify the severity of plaintiff's degenerative disc disease, and that without the benefit of an MRI or other x-rays, physical findings of neurological deficits such as weakness, loss of sensation, or reflex changes are the best indication of severe disc disease. However, there are no such neurological findings in Dr. Sanchez' treatment notes or in Dr. Colley's physical examination of the plaintiff.

Additionally, plaintiff contends that "the course of treatment pursued by [Dr. Sanchez] has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported," and that Dr. Sanchez's opinion contrasts sharply with the other evidence of record, rendering it less persuasive. (Plaintiff's brief, p. 9; R. 33). She argues that "the ALJ either substituted his own judgment for that of the physician, choosing to act as both adjudicator and medical expert, or he has based his opinions on the comments of the medical expert present at the hearing, neither of whom has had the opportunity to actually examine Plaintiff." (Plaintiff's brief, p. 33). Plaintiff's argument is unpersuasive. The ALJ did not "arbitrarily substitute his own hunch or intuition for the diagnoses of [Dr. Sanchez]," see Marbury v. Sullivan, 957 F.2d 837, 840-41 (11th Cir. 1992), or make his "own independent medical findings." See Carlisle v. Barnhart, 392 F. Supp. 2d 1287, 1295 (N.D. Ala. 2005). Instead, his findings are supported by the record as a whole, including the opinions of an examining physician, two examining psychologists, a non-examining psychologist, and two testifying medical experts.

In addition, while the non-examining medical experts' opinions do not constitute substantial evidence standing alone, their opinions are supported by those of the examining

16

practitioners, Drs. Rogers, Smith and Colley.  With regard to plaintiff's physical RFC, Dr.

Evans' opinion is supported by, and consistent with, the opinion of Dr. Colley.  Both

physicians placed plaintiff's RFC in the range of light work, with Dr. Evans' opinion

including further postural and manipulative limitations (R. 329-32). With regard to plaintiff's

mental RFC, Dr. Sanchez' history of conservatively treating plaintiff's anxiety with only

mild levels of medications, without additional psychological treatment, undercuts his

assertion that plaintiff has severe general anxiety disorder on the Disability Questionnaire,

especially in light of the opinion of two psychologists that she has mild and/or moderate

limitations.  Furthermore, Dr. McKeown's opinion of mild to moderate mental limitations

is consistent with the opinions of Drs. Smith and Warren – neither psychologist placed more

than moderate limitations on plaintiff's ability to function in a vocational setting.  This lends

significant support to the ALJ's decisions because "[i]n cases involving mental illness, the

opinions of mental health professionals are especially important."  Barber v. Barnhart, 459

F. Supp. 2d 1168, 1173 (N.D. Ala. 2006).

The ALJ articulated good cause for discrediting the opinions of Dr. Sanchez.  Thus,

he did not err by accepting the testimony of the testifying medical experts, as their opinions

were consistent with those of other examining mental health practitioners in the record.  See

Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008)(unpublished opinion)(holding

that the ALJ did not err by giving substantial weight to the opinions of the non-examining

physicians because those opinions did not conflict with the opinions of examining sources);

Osborn v. Barnhart, 194 Fed. Appx. 654, 667 (11th Cir. 2006)(unpublished opinion)(holding

that substantial evidence supported the ALJ's decision to give more weight to the state agency's evaluation and give only minimal weight to the opinion of the claimant's treating physician where the ALJ discredited the treating physician's opinion properly).

Lastly, plaintiff argues that the ALJ erred by construing Dr. Sanchez's inability to review the other medical reports contained in the record as support for his decision to assign Dr. Sanchez' opinion little weight. While this reason, standing alone, may not have provided good cause for discrediting Dr. Sanchez' opinion, the ALJ has listed other sufficient reasons for discrediting Dr. Sanchez' opinion. For example, as noted above, he stated that Dr. Sanchez' opinion is inconsistent with his own treatment notes and contrasts sharply with the other evidence of record and, as to plaintiff's mental limitations, that the opinions of specialists within their area of specialty are entitled to more weight than the opinion of a non-specialist. The ALJ stated with particularity his reasons for discrediting Dr. Sanchez' opinions and these reasons are supported by substantial evidence in the record. Accordingly, the court finds no reversible error.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law. Accordingly, the decision is due to be AFFIRMED. A separate judgment will be entered.

Done, this 12th day of July, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE